UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RONALD BUZZARD, JR,

                    Petitioner,

        v.

JEFFREY UTTECHT,

                    Respondent.

CASE NO. 2:21-cv-01061-JCC-JRC

REPORT AND RECOMMENDATION

NOTED FOR:  April 15, 2022

This matter is before the Court on referral from the District Court.

Petitioner brings this matter under 28 U.S.C. § 2254, challenging proceedings pursuant to

his October 2002 Washington State conviction and sentence for first degree rape of a child.

After petitioner was sentenced, he was released subject to conditions imposed by Washington's

Indeterminate Sentence Review Board ("ISRB"), which later found that petitioner violated

certain conditions and returned him to custody.

Petitioner's arguments are threefold.  First, he argues that the ISRB-imposed conditions

upon release were unlawful, but most of his arguments are moot because he is no longer subject

to those conditions now that the ISRB returned him to custody.  To the extent that certain arguments are not moot, petitioner fails to show that the state courts misapplied any clearly established federal law.  Second, petitioner argues that the ISRB violated his right to a jury trial by returning him to custody without a jury finding.  But the right to a jury trial does not apply to parole revocation hearings such as the one at issue here.  Third, petitioner argues that the sentencing judge unconstitutionally failed to advise him of the nature of his sentence.  Petitioner has already raised this argument in this Court, unsuccessfully, so that this ground should be dismissed without prejudice as successive.

Therefore, the petition should be denied.  Grounds one through nine should be dismissed with prejudice.  Ground ten should be dismissed without prejudice.  No certificate of appealability should issue, and permission to proceed *in forma pauperis* should be revoked.

## BACKGROUND

In October 2002, petitioner was sentenced to a minimum term of 123 months and a maximum term of life. Dkt. 29-1, at 29–30.  That sentence was authorized by Washington law mandating that "the court shall, in addition to the other terms of the sentence, sentence the offender to community custody under the supervision of the department and the authority of the board for any period of time the person is released from total confinement before the expiration of the maximum sentence." *See* former RCW 9.94A.712(5) (2002).  Thus, petitioner would be in prison for life unless released from custody with the approval of the ISRB and, if released, the Department of Corrections would supervise him for life. *See* former RCW 9.94A.712(6)(b) (2002) (requiring that petitioner comply with conditions imposed by the ISRB); *see also* RCW 9.95.420 (providing for the ISRB to conduct release hearings).

1    The state court that sentenced petitioner suspended his sentence under a Special Sex

2  Offender Sentencing Alternative.  *See* Dkt. 29-1, at 36.  In 2003, however, the sentencing court

3  revoked the suspended sentence and returned petitioner to custody.  Dkt. 29-1, at 36.

4    Petitioner appealed his conviction, which was affirmed, with the mandate issuing in

5  2006.  *See* Dkt. 29-1, at 89.  The ISRB subsequently extended petitioner's minimum sentence,

6  before eventually releasing petitioner in 2016.  *See* Dkt. 29-1, at 89.  Petitioner also filed a §

7  2254 petition for writ of habeas corpus in this District, challenging his conviction and sentence.

8  Dkt. 29-1, at 2.  The Court dismissed the petition with prejudice as untimely.  Dkt. 29-1, at 3.

9    On June 15, 2016, the ISRB released petitioner from confinement to community custody.

10  Dkt. 29-1, at 39.  The release order imposed certain conditions, such as restrictions on

11  petitioner's internet access.  Dkt. 29-1, at 40.  Pursuant to state law, violation of such conditions

12  imposed by the ISRB subjected petitioner to sanctions including potential return to custody to

13  serve the remainder of his sentence.  *See* former RCW 9.95.435(1) (2002).

14    In July 2020, petitioner's community custody was suspended for allegedly violating

15  certain conditions, including conditions that petitioner challenges in this matter.  *See* Dkt. 29-1,

16  at 46, 49.  The ISRB held a revocation hearing on August 26, 2020, found that petitioner had

17  violated various conditions, and issued a decision returning petitioner to custody.  *See* Dkt. 29-1,

18  at 45–49.  Petitioner is currently in custody at the Coyote Ridge Corrections Center.  *See* Dkt.

19  29-3, at 229.

20    Petitioner has filed many personal restraint petitions in state court challenging his guilty

21  plea, sentence, the Department of Corrections' calculation of his anticipated release date, and the

22  ISRB's extensions of his minimum term of imprisonment.  Dkt. 29-1, at 8, 89–90.  These efforts

23  have been unsuccessful.  *See* Dkt. 29-1, at 90.

24

REPORT AND RECOMMENDATION - 3

1    Petitioner brought this matter in District Court in August 2021. Dkt. 1. His amended

2    petition raises ten grounds for relief: grounds one to eight challenge community custody

3    conditions that were imposed as part of the ISRB's 2016 release order (Dkt. 26, at 5–19); ground

4    nine challenges the ISRB's 2020 decision returning petitioner to confinement (specifically, the

5    ISRB setting a new minimum term without a jury making factual findings) (Dkt. 26, at 21); and

6    ground ten challenges the imposition of the "mandatory parole term" at his 2002 sentencing

7    (Dkt. 26, at 22).

8    During the pendency of this matter, petitioner also brought a second habeas petition

9    challenging proceedings following his 2002 conviction and sentence. *See Buzzard v.*

10   *Andrewjeski*, Case No. 2:22-cv-00059-RAJ. Petitioner opposed treating that petition as a motion

11   for leave to amend the petition in this matter, so that the undersigned has recommended dismissal

12   of the habeas petition filed under Case Number 2:22-cv-00059-RAJ.

13                                    **DISCUSSION**

14   **I. Legal Principles**

15   Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

16   petitioner is barred from relitigating any claim adjudicated on the merits in a state court

17   proceeding unless the adjudication "resulted in a decision that was contrary to, or involved an

18   unreasonable application of, clearly established Federal law, as determined by the Supreme

19   Court of the United States" (28 U.S.C. § 2254(d)(1)), or if the adjudication "resulted in a

20   decision that was based on an unreasonable determination of the facts in light of the evidence

21

22

23

24

1    presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); *see Harrington v. Richter*, 562

2    U.S. 86, 98 (2011).

3        A petition will not be granted unless the petitioner "has exhausted the remedies available

4    in the courts of the State" or otherwise fits an exception set forth in 28 U.S.C. § 2254(b)(1).

5    Moreover, a habeas petition is subject to a one-year statute of limitations that begins running on,

6    as relevant here, the later of "the date on which the judgment became final by the conclusion of

7    direct review or the expiration of the time for seeking such review" or "the date on which the

8    factual predicate of the claim or claims presented could have been discovered through the

9    exercise of due diligence."  28 U.S.C. §§ 2244(d)(1)(A), (D).

10       **II.  Grounds One to Eight**

11       Respondent asserts that the Court should dismiss grounds one through eight as moot

12   because they challenge conditions of community custody but petitioner is no longer on

13   community custody or subject to those conditions.  Dkt. 28, at 9.  The undersigned agrees in part

14   and further finds that although certain challenges to these conditions may not be moot,

15   petitioner's arguments on the merits related to these conditions fail.

16       A habeas petition is moot where the petitioner "seeks relief [that] cannot be redressed by

17   a favorable decision of the court issuing a writ of habeas corpus."  *Burnett v. Lampert*, 432 F.3d

18   996, 1000-01 (9th Cir. 2005).  Here, petitioner challenges community custody conditions that he

19   alleges restricted his abilities to (1) travel outside of Washington State or to certain areas, (2) use

20   his computer and access the internet, (3) use social media, (4) possess sexually explicit materials,

21   (5) possess or use alcohol, (6) submit to polygraph examinations, (7) obtain a sexual deviancy

22   evaluation and comply with treatment, and (8) submit to drug and alcohol monitoring.  *See*

23   *generally* Dkt. 26.  To the extent that petitioner is challenging community custody conditions

24

1    that he was not convicted of violating, however, these matters are moot.  Petitioner was found

2    guilty of violating only conditions regarding contact with minors, accessing the internet

3    (including social media) without approval, and possessing a sexually explicit video.  *See* Dkt. 29-

4    1, at 46.  Thus, all but his challenges to his internet/computer access and ability to possess

5    sexually explicit materials are clearly moot.  *Accord Corelleone v. California*, No. CV 12-9109-

6    GW PJW, 2014 WL 5660782, at *2 (C.D. Cal. Nov. 3, 2014) ("Petitioner, however, is no longer

7    subject to any of these conditions because his parole ended. . . .  Thus, even were the Court to

8    agree with him, it is not capable of providing any relief since he is no longer subject to these

9    conditions.").

10         Petitioner argues that the Court may review these matters because they are "capable of

11   repetition yet evading review."  Dkt. 32, at 5.  This exception applies to otherwise moot matters

12   where "(1) the challenged action is in its duration too short to be fully litigated prior to cessation

13   or expiration, and (2) there is a reasonable expectation that the same complaining party will be

14   subject to the same action again."  *Fed'l Election Comm'n v. Wisc. Right to Life, Inc.*, 551 U.S.

15   449, 462 (2007) (internal quotation marks omitted).  Petitioner fails to meet the first requirement

16   for this exception to apply.  There is no reason to believe that the time between imposition of

17   community custody conditions and their expiration would be so short that these matters would

18   evade review.  Indeed, petitioner could—and did—obtain review of certain conditions in

19   multiple forums, including appealing to the ISRB and seeking collateral review related to the

20   conditions.  *See* Dkt. 26, at 32; Dkt. 29-2, at 176.  Petitioner remains in custody, and there is

21   nothing in the record to support his claims that he will be released from custody subject to the

22   same conditions again.  To the extent that petitioner argues his claims are live because he seeks

23   damages, money damages are not an available remedy in a habeas proceeding. *See Sisk v. CSO*

24

1    *Branch*, 974 F.2d 116, 117 (9th Cir. 1992).  Petitioner's cited case of *State v. Riles*, 135 Wn.2d

2    326 (1998), does not support his arguments.

3           However, the Court is not convinced that the challenge to the internet/computer access

4    and possession of sexually explicit materials restrictions is moot.  Petitioner's community

5    custody was revoked for violating those very conditions, so that it would appear that if they were

6    invalid, he could call into question that revocation.  Respondent does not address this wrinkle,

7    other than to state that petitioner is no longer subject to any community custody conditions.  *See*

8    Dkt. 28, at 8; *see also Seidel v. Powers*, No. CV06-4638-DDP (PLA), 2009 WL 365761, at *4

9    (C.D. Cal. Feb. 11, 2009) (addressing on the merits an argument that a condition of parole was

10   improperly imposed where petitioner had been reincarcerated for violating that condition).  Even

11   if these challenges are not moot, however, petitioner cannot show that he is entitled to relief on

12   the merits of his arguments.

13          When denying discretionary review related to one of petitioner's personal restraint

14   petitions, the Washington Supreme Court Commissioner stated, among other things, that

15   limitations on possessing sexually explicit materials and using electronic communications and

16   the internet were crime-related (and therefore proper).  Dkt. 26, at 34.  The Commissioner also

17   rejected the argument that the limitations on possessing sexually explicit material were

18   unconstitutionally vague, citing Washington case law to the contrary.  Dkt. 26, at 34.

19          Petitioner argues that these restrictions were not crime related (Dkt. 26, at 7, 10), that

20   limiting his ability to use social media violated the First Amendment (Dkt. 26, at 8), and that the

21   restriction related to sexually explicit materials was unconstitutionally vague.  Dkt. 26, at 10.

22          Related to petitioner's first argument, state law vests the ISRB with broad discretion to

23   impose crime-related community custody conditions.  *See Matter of Winton*, 196 Wn.2d 270,

24

1    277 (2020) (citing relevant statutes).  To the extent that petitioner is arguing that the ISRB

2    violated Washington state law requiring such conditions to be crime-related, the Court cannot

3    review his arguments.  *E.g.*, *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011).  Nor is the Court

4    aware of any Supreme Court precedent addressing whether the U.S. Constitution requires such

5    conditions imposed by an indeterminate sentencing review board to be crime related.  Even if

6    there were such authority, the record discloses that petitioner had prior criminal conduct related

7    to possession of pornographic depictions of minor females, possession of a file depicting a young

8    female having intercourse with him, and electronic communications/relationships with juvenile

9    females.  Dkt. 26, at 34; *see also* Dkt. 26, at 94.  Petitioner fails to explain how the

10   Commissioner unreasonably determined the facts in light of the evidence presented.

11        Petitioner also argues that social media restrictions violate the First Amendment under

12   *Packingham v. North Carolina*, ⎯⎯ U.S. ⎯⎯, 137 S. Ct. 1730 (2017).  Dkt. 26, at 8.  He

13   appears to refer to the ISRB's condition that he not access the internet without developing a

14   written safety plan approved by his community custody officer and sexual deviancy therapist and

15   installing any special equipment on his computer required by the CCO.  Dkt. 29-1, at 40; *see also*

16   Dkt. 29-2, at 55 (explaining that petitioner's safety plan limited his ability to use social media by

17   requiring approval to access social media and restricting use to communicating with family,

18   friends, and for employment); Dkt. 29-2, at 173 (safety plan).

19        Petitioner fails to demonstrate that such a condition violates the First Amendment under

20   *Packingham*.  In that case, the Supreme Court held that a statute criminalizing sex offenders'

21   accessing social networking sites "where the sex offender knows that the site permits minor

22   children to become members or to create or maintain person Web pages" violated the First

23   Amendment.  The Court criticized the breadth of the law at issue, which broadly prohibited

24

1   access to social media sites, but noted that more specific laws would be permissible. *See* 137 S.

2   Ct. at 1737. Thus, *Packingham* does not hold that a limitation to using social media that stops

3   short of a blanket prohibition on accessing such sites is unconstitutional. Nor does *Packingham*

4   involve a challenge to probation conditions. *Accord Stock v. Uttecht*, No.

5   320CV05778RAJDWC, 2021 WL 5016140, at \*6 (W.D. Wash. June 9, 2021), *report and*

6   *recommendation adopted*, 2021 WL 5014089 (Oct. 28, 2021). As noted above, the record shows

7   that petitioner was subject to a partial deprivation of his interest in accessing the internet after he

8   committed crimes through that medium. He fails to show that this partial deprivation was

9   unconstitutional.

10          Finally, petitioner argues that it was unconstitutionally vague for the ISRB to prohibit

11  him from possessing or accessing sexually explicit materials intended for sexual gratification.

12  *See* Dkt. 26, at 10, 28. Petitioner appears to rely upon Washington case law holding that a

13  prohibition against possessing "pornography" was unconstitutionally vague, but Washington

14  later upheld conditions related to "sexually explicit material" despite a vagueness challenge. *See*

15  *State v. Nguyen*, 191 Wn.2d 671, 680 (2018). Moreover, petitioner fails to identify, and the

16  Court is not aware of, any United States Supreme Court precedent that clearly establishes that a

17  restriction against possessing or accessing "sexually explicit materials that are intended for

18  sexual gratification" is overbroad or vague. *Cf. United States v. Gnirke*, 775 F.3d 1155, 1163,

19  1166 (9th Cir. 2015) (finding [without citation to U.S. Supreme Court authority] that a broader

20  restriction, which referred to 18 U.S.C. § 2256(2) and thereby encompassed virtually any

21  depiction of adult sexual conduct, was unconstitutional but approving of a restriction that would

22  bar depictions that were "explicit sexually stimulating depictions of adult sexual conduct. . . .").

23

24

1  Petitioner fails to show that the Commissioner unreasonably applied clearly established federal

2  law when rejecting his argument.  *See* Dkt.

3       For these reasons, the District Court should deny petitioner's grounds one through eight

4  because most of his arguments are moot and the rest are meritless.  The Court declines to reach

5  respondent's alternative argument that these grounds for relief are untimely raised.  *See Van*

6  *Buskirk v. Baldwin*, 265 F.3d 1080, 1083 (9th Cir. 2001).

7  **III.  Ground Nine**

8       Petitioner next argues that the ISRB violated his right to a jury trial when it set a new

9  minimum term of confinement in 2020 (after he violated his community custody conditions),

10  returning petitioner to custody without a jury making findings.  Dkt. 26, at 21.  Respondent

11  argues that this claim is unexhausted[1] and that it fails on the merits.  *See* Dkt. 28, at 10–11.  The

12  Court agrees that the claim fails on the merits.  *See Cassett v. Stewart*, 406 F.3d 614, 624 (9th

13  Cir. 2005) ("[A] federal court may deny an unexhausted petition on the merits only when it is

14  perfectly clear that the applicant does not raise even a colorable federal claim.").

15       There is no clearly established federal law creating a right to a jury trial at a parole

16  revocation hearing.  "[R]evocation of parole is not part of a criminal prosecution and thus the full

17  panoply of rights due a defendant in such a proceeding does not apply to parole revocations."

18  *United States v. Hall*, 419 F.3d 980, 985 (9th Cir. 2005) (internal citation, quotation marks, and

19  footnote omitted).  "Parole, probation, and supervised release revocation hearings are

20

21  _____

22       [1] This claim is no longer clearly unexhausted.  Petitioner raised this claim in a March
     2021 PRP (*see* Dkt. 29-2, at 40), and the Supreme Court disposed of his motion to modify the
     Commissioner's ruling on January 5, 2022.  *See* Washington Courts, Case Search,

23  https://dw.courts.wa.gov (Supreme Court cause number 1003161).  Regardless of whether
     petitioner has exhausted this ground or not, however, the ground fails to present a colorable

24  federal claim for the reasons discussed in this section.

constitutionally indistinguishable and are analyzed in the same manner." *Id.* at n.4. "There is no Sixth Amendment right to a jury trial for post-conviction determinations," which necessarily include parole eligibility determinations. *United States v. Santana*, 526 F.3d 1257, 1262 (9th Cir.2008); *see also United States v. Knights*, 534 U.S. 112, 120 (2001) (at probation revocation hearings, the right to a jury and proof beyond a reasonable doubt, among other things, do not apply).

Thus, courts have routinely rejected arguments that the Sixth Amendment's protections apply at a parole revocation proceeding. *E.g.*, *Price v. Schwarzenegger*, 344 F. App'x 375, 376 (9th Cir. 2009) (rejecting argument that a parolee was entitled to a jury trial at his parole revocation hearing); *Upton v. Schwarzenegger*, No. EDCV10631ABPJW, 2017 WL 4990515, at *3 (C.D. Cal. Oct. 13, 2017) (same), *report and recommendation adopted*, 2017 WL 4990448 (Oct. 30, 2017); *Wilson v. Schwarzenegger*, No. CV 10-2306-MMM-PLA, 2010 WL 5422548, at *7 (C.D. Cal. Nov. 16, 2010) (same), *report and recommendation adopted*, 2010 WL 5523188 (Dec. 21, 2010).

Petitioner relies on *United States v. Haymond*, which he asserts extended the right to a jury trial to parole revocation hearings. Dkt. 32, at 8 (citing 139 S. Ct. 2369 (2019)).

The *Haymond* defendant served a sentence of incarceration, followed by 10 years of supervised release. While on supervised release, the defendant was found with child pornography. 139 S. Ct. at 2373–74 (plurality). A federal sentencing statute, 18 U.S.C. § 3583(k), mandated the imposition of another, additional prison term of at least five years and up to life, without regard to the length of the initial prison term authorized for the crime of conviction. *Id.* at 2374 (plurality).

1    The plurality opinion in *Haymond* concluded that this scheme was unconstitutional.  This

2    opinion reasoned that the statute at issue violated the right to a jury trial because it increased a

3    mandatory minimum sentence based on facts not found by a jury beyond a reasonable doubt.

4    *See Id.* at 2378–79 (plurality).  Even if this plurality opinion represented clearly established

5    federal law, however, it would not render the ISRB's proceedings at issue in this case

6    unconstitutional.  Petitioner is not facing a new punishment:  he was released before the end of

7    his authorized sentence and could be returned to prison for violating the conditions of his release.

8    The Washington State sentencing court initially imposed a total term of "life" (Dkt. 29-1, at 29),

9    and petitioner is facing the remainder of this sentence.  *See* former RCW 9.95.435(1) (2002) ("If

10   an offender released by the board under RCW 9.95.420 violates any condition or requirement of

11   community custody, the board may transfer the offender to a more restrictive confinement status

12   to serve up to the *remaining portion of the sentence*. . . ."  (Emphasis added.)).  There is nothing

13   unconstitutional about the revocation of petitioner's parole, under *Haymond*.  Indeed, the

14   plurality opinion in that case expressly contrasted the unusual situation posed by § 3583(k) with

15   a situation where a defendant is released on parole or probation and can be returned to prison for

16   violating terms of parole or probation to serve "*only* the remaining prison term authorized by

17   statute for his original crime of conviction."  *Id.* at 2382 (plurality).  The latter situation is "a

18   result entirely harmonious with the Fifth and Sixth Amendments."  *Id.* (plurality).

19   Therefore, petitioner's claim that his parole revocation violated his right to a jury trial

20   does not present a colorable federal claim.  To the extent that petitioner cites the rights to due

21   process and equal protection (*see* Dkt. 26, at 21), his arguments are indistinguishable from and

22   resolved by analysis of his jury trial argument.  *See also Pierre v. Wash. State Bd. of  Prison*

23   *Terms & Parolees*, 699 F.2d 471, 473 (9th Cir. 1983) (a preliminary hearing not required where

24

a final hearing is held after parolee's detention for a violation of parole).  The Court should deny the ninth ground for relief.

**IV.  Ground Ten**

Petitioner's tenth ground for relief is that the sentencing court failed to advise him that he was facing a life sentence in 2002, in violation of the Fifth, Sixth, and Fourteenth Amendments. Dkt. 26, at 22.  Respondent argues that this claim is time-barred and successive.  Dkt. 28, at 15–16.  The Court agrees with respondent on the basis that this claim is successive.

In April 2015, petitioner filed a § 2254 petition in this District, alleging that he was not informed of the mandatory parole term or the ISRB's jurisdiction over petitioner for the remainder of his life. Dkt. 29-1, at 6.  He argued that transcripts from his hearings constituted newly discovered evidence such that his claims were exempt from the one-year time bar for filing a habeas petition.  *See* Dkt. 29-1, at 7.  The Court rejected his arguments and dismissed the matter with prejudice as untimely.  Dkt. 29-1, at 12, 22.

Thus, ground 10 is successive.  "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application."  28 U.S.C. § 2244(b)(3)(A).  Petitioner does not allege, and it does not appear, that he has obtained authorization to file a second or successive petition from the Ninth Circuit.  Consequently, this Court lacks jurisdiction to consider Ground Ten as a challenge to petitioner's underlying conviction or sentence.  *See Magwood v. Patterson*, 561 U.S. 320, 330–31 (2010); *Cooper v. Calderon*, 274 F.3d 1270, 1274 (9th Cir. 2001).  If petitioner contends that his petition meets an exception to the bar on successive petitions, that argument must first be presented to the Ninth Circuit Court of Appeals.  This ground should be dismissed without prejudice.

**CERTIFICATE OF APPEALABILITY**

Petitioner seeking post-conviction relief under 28 U.S.C. § 2254 may appeal a district court's dismissal of the federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge.  A certificate of appealability may issue only if petitioner has made "a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2).  Petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Petitioner is not entitled to a certificate of appealability with respect to this petition.

**IN FORMA PAUPERIS STATUS**

Petitioner's *in forma pauperis* ("IFP") status should be revoked for purposes of an appeal of this matter.  IFP status on appeal shall not be granted if the district court certifies "before or after the notice of appeal is filed" "that the appeal is not taken in good faith[.]"  Fed. R. App. P. 24(a)(3)(A); *see also* 28 U.S.C. § 1915(a)(3).  A petitioner satisfies the "good faith" requirement if he seeks review of an issue that is "not frivolous," and an appeal is frivolous where it lacks any arguable basis in law or fact.  *Gardner v. Pogue*, 558 F.2d 548, 551 (9th Cir. 1977); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Appeal from this matter would be frivolous, so that IFP status should be revoked for purposes of any appeal.

**CONCLUSION**

The habeas petition should be denied.  All grounds should be dismissed with prejudice except ground ten, which should be dismissed without prejudice.  No certificate of appealability should issue.  Petitioner's *in forma pauperis* status should be revoked.

1       Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

2 fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P.

3 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo*

4 review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

5 of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.*

6 *Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

7 imposed by Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on April

8 15, 2022, as noted in the caption.

9       Dated this 25th day of March, 2022.

J. Richard Creatura
Chief United States Magistrate Judge

REPORT AND RECOMMENDATION - 15